May it please the Court, this is Devon Terry-O'Rourke. I represent the petitioner Samuel Avila-Morales in this petition for review. I'd like to reserve five minutes for rebuttal time. Okay, please keep track of your own time. I will do. Okay, thank you. The government here contends that Mr. Avila was not diligent in pursuing his remedies, despite the fact that there was no remedy available for Mr. Avila. Is that right, that there was no remedy? I believe that is correct. How about ineffective assistance of counsel? I do not believe that he could have pursued those remedies because the California Supreme Court held that state habeas is not available to challenge an ineffective plea negotiation once someone is released from state custody, which for Mr. Avila happened before he even knew that there were immigration consequences in his underlying condition. Could you keep your voice up? Yes. So the California Supreme Court has held that state habeas is not available to challenge a failed plea negotiation, essentially, unless the person is in state custody. And so once he was released from state custody, there would have been no way for him to seek to challenge his state plea until the California legislator enacted 1473.7. That was in 2017, correct? Correct, although I did discover that it was actually September 2016, to be precise, that the California legislator enacted that provision. So it became effective in late 2016, early 2017. Okay, so what arguments were made to the BIA that there was diligence in waiting for the period of time from the enactment of the statute to the filing? Sure, and this is addressed in the positioner's declaration. He first learned, I think one of the key errors in the BIA's decision is that it conflates the deportation itself as being the error in his conviction. And that wasn't the error. He didn't know that there was any other alternatives that he could have pled to that could have protected him. So basically, until he discovered in August 2018, when he was represented by Mr. Steve in the District of Washington. Why couldn't he have discovered the statutory enactment? I mean, don't our cases say that ignorance of the law or sort of misunderstanding or unsophistication is not a basis for tolling? Sure, except that, again, the equitable tolling line of cases established that he had to learn of the error before he had a duty to act. And he did not learn of the error until his counsel in Eastern Washington advised him, hey, you know, I think there might be something that went wrong here and that there was another route that you could have pursued. And at that point, he was still detained. And it took him, it's addressed in his declaration, but it took him several months to get out of detention and then reach out to California Council. And then from there, things move very quickly. So, you know, he was advised to reach out to California Council. He did so in April 2019. California Council then had to get the records from the Superior Court, got those records and filed the motion in June. And then it was granted in August. And he promptly filed for his motion to reopen within 90 days of that date. And, you know, the BIA rules that we cited in our supplemental 28-J a few months ago, you know, established that there was nothing he could have filed with the BIA until his post-conviction was granted. So that much is clear. If he had filed it earlier, it would have been denied as premature or there's a very good risk it could have been based on the rule that says pendency of or expectancy of even a strong post-conviction motion. You could have a declaration from 10 lawyers saying you're going to get granted relief. Doesn't matter until the state court actually grants relief. Yeah, but that appears to be exactly what the BIA relied on, on its sort of secondary holding. It said it wanted the time to run from the time he applied rather than the time he heard back. Am I reading the BIA correctly? There's to say the BIA disagreed with you. Sorry, can you rephrase the question? Yeah. The BIA turns it down saying it's untimely. First off, BIA says, well, you should have done it long, long ago, like, you know, 20 years ago. Sure. But then it says, alternatively, if we look at the current sort of things, the time began to run as soon as your lawyer filed for a setting at the one side, which is exactly the opposite of what you're saying. Right. Thank you, Judge. I understand the question now. I think the issue there is that if that is the rule, then the availability of a motion to reopen is going to hinge solely on state court processing times for post-conviction relief. So in this particular case, yes, he could have potentially filed his motion to reopen after his state court motion was filed and probably, you know, it would have been decided before his motion to reopen was actually adjudicated. So yes, in this particular case, that could have worked. My question is not saying or suggesting that you're wrong, rather it's suggesting the BIA is wrong. Thank you, Judge. I appreciate that. So you know, I think that essentially my argument here today is that diligence under this court's precedence should not require litigants to pursue futility. And you know, up until California enacted 1473.7, any efforts to pursue his post-conviction relief would have been futile. You know, there was no option to seek state habeas. As we explained in our motion for judicial notice, which I'll get to in a minute, you know, there was no failure to provide the required 1016.5 advisals. That would have been another possible route, and I wanted to make it very clear that that route was not available to Mr. Avila in this case. And I also wanted to point to a case out of California, and I'm happy to file a 28-J on it as it is not referenced in the briefs, People v. Vivar, which is 11 California 5-5-10. And at 522 to 523, the court talks about the efforts that that individual went to to try to overturn his offense. And it was before 1473 was enacted, and he tried quorum nobis, he tried 1203.4 vacature, and these things just didn't work. And it should not be required that people have perfect diligence. People are not required to hire a cadre of lawyers to bang their heads against the wall in futility. And keep in mind that, you know, this whole thing arose in 1998, 12 years before the Supreme Court found in Padilla that the Sixth Amendment protects an individual's right to know about definite... Didn't California make that same decision, but much earlier? I mean, that's the formula, that's why they have 1016.5, but it was the... The California Supreme Court reached that decision much... Much earlier, yeah. I was still on the state court when the California Supreme Court came down with that decision. Okay. And we always had to remind the petition, you know, the defendants whether or not they had considered the immigration consequences of their... And I think that, you know, the 1016 advisals are great, but, you know, as you may have experienced, you know, many times when people are reviewing court forms in a crowded court with supposedly an interpreter, it's unclear whether that was actually explained in any meaningful way. And there's a difference between saying, as the Supreme Court discussed in Padilla, that, you know, there's a difference between saying, there may be deportation consequences and this offense is going to get you deported, like it's definite and certain. And that was the situation for Mr. Avila and, you know, he would not have chosen that plea had he known of those consequences, that's the whole point. The extraordinary circumstance for equitable tolling is just there was no reasonable avenue, there was no avenue available for relief until, was it 1473.7 was adopted by the California legislature? Yes. I mean, that and also that, you know, as established by the cases, you know, he didn't even learn that there was any other option available to him until August 2018. And again, you know, people are entitled to rely on the advice of their counsel. And if, you know, he had a lawyer, he assumed that that lawyer had done the best he could for him. And so he was like, I guess I'm just stuck with this offense. And it wasn't until August 2018, he was like, oh, wow, what, I could still be a permanent resident? So what's the relief you're asking from us? Well, we're asking that you grant the petition for review. And what does that get you? Well, it gets him restored to LPR status. I mean, I think he is still, would still be a lawful permanent resident, but for... They have to go back to the BIA though for them to... I mean, I don't think there's anything left for the BIA to do. And, you know, I could provide some supplemental authority on that. One that comes to mind is a case of mine from a while ago, Medina Lara versus Holder, which holds that, you know, there's no need to do a remand if there's, if it's just, you know, there's nothing left to do. You're asking us to decide in the first instance that there is equitable tolling, that there was diligence sufficient to satisfy the tolling. Yes. The BIA had a chance to do that and they didn't. And we don't think there's anything left for the BIA to do at this point. Particularly... Well, no, once the BIA is told equitable tolling is available, then the question is what relief? And the BIA never got to the question of granting or not granting the requested relief. So our question really is, or at least my question is, can we tell the BIA it must grant the relief? Or do we have to go back to have you guys go to the BIA and request the relief of setting it aside? I mean, I think... I understand it would be much more efficient from your standpoint if we could do it right here. Sure. No, I mean, I think you can. This is a case where you can remand with instructions to grant because the law is crystal clear and there's no debate. And the respondent here has conceded that the conviction underlying this offense is no longer a removable offense and that this was a substantive grant of vacature under matter of pickering. So there's... So tell us why we wouldn't do the opposite under LONA v. BAR, which basically says, and I think LONA v. BAR is the inverse of your argument here, which is that we can find that the BIA implicitly determined that there wasn't diligence sufficient to satisfy tolling the facts. And you're saying to us that there are facts sufficient, even if the BIA didn't consider it, given... And your friend on the other side is going to argue, LONA, to us. So why wouldn't we send this back to the BIA to consider in the first instance since this analysis wasn't done using the correct timeframe? Well, I mean, again, I think because the law of the circuit is clear that people don't have to have maximum diligence and the BIA got the law wrong and there's no reason for them to have another bite at the apple. Well, it got the law wrong as to equitable tolling. Next question is, assuming this is timely, this is if you win on the equitable tolling, the next question is, is the BIA going to set the earlier deportation order aside and they've not said yes or no? Your argument is, I guess it's just a ministerial thing. Everybody knows that's the answer. Why make us go through it? That's exactly right. I mean, I don't think there's anything, there's nothing for the BIA to do. Everyone's conceded... Oh, there is something for them to do. You think it's obvious that they have to do it? Yes. That is a better way to say it, Your Honor. Yes. I'll reserve the balance of my time. Thank you, Your Honors. May it please the court, Alexander Lutz for the government. So many points to make in response. Could you voice up, please? Absolutely. And thank you for asking. So many points to make in response, Your Honors. First is the point Your Honor, Judge Fletcher just made. There absolutely is something for the board to do here, even if the court disagrees with the government's position on equitable tolling. First of all, the equitable tolling issue is a threshold timeliness issue. So even if the board had agreed that the motion was timely, which is the only ground they reached, they would still have to deal with the question of what to do with the merits of Mr. Avila's argument. They haven't reached that issue yet. But isn't the answer to that question obvious? Respectfully, no, Your Honor. First of all... Except the conviction to one side, what's the basis for the removal order? Well, Your Honor, a couple of points in response. First of all, I want to start by pointing out that I believe I heard opposing counsel suggest that the government has conceded that Mr. Avila is no longer removable. What we said, in fact, is that this order is not enforceable because it has already been enforced. That's a different question. So I want to just clarify the scope of our statement in the brief. He's been removed? He has been removed. And then he reentered in the same year he was removed. And as we noted in our brief, that means the order can't be enforced again without being reinstated. And if it is reinstated, Mr. Avila would have a whole other ground to petition for this court's review. He could challenge in that case whether his underlying removal order was a gross miscarriage of justice, which is an argument he mentions in his opening brief, concedes he wants to make but can't make. So at the end of the day, he's challenging an order that can't be enforced again because it has been enforced. That's not the same thing as... So when they started this particular proceeding, they did not invoke, they did not attempt to reinstate. Is that right? That's correct, Your Honor. But it was actually Mr. Avila who started this proceeding. The timeline of this case is that Mr. Avila sustained a conviction in 1998. Yes. Then in 1999, he was charged with removability based on that conviction, ordered removed, and physically removed to Mexico only to unlawfully reenter the United States. And the critical point in this case, now that, you know, to the issue of diligence, is that Mr. Avila, in the motion to reopen he filed that started this proceeding, didn't say anything to the agency about what he had been doing between 1998, when he sustained this conviction, 1999, when he was removed in 2018. Why is that the proper timeframe? I know the government is arguing this sort of longer period of time that for tolling purposes and the one that I think the BIA and the IJA improperly used. But why is that the timeframe? He obviously can't know about the change in law until it occurs in 2017. So isn't the appropriate timeframe that he needs to be arguing for tolling 2017 to the time that he filed? Respectfully, no, Your Honor. But again, I'd make a couple of points in response. And the first one I'd like to just lay out and then come back to it is that regardless of what timeframe we use, regardless of when we start the clock, there is no diligence here because the petitioner did not put forward any evidence of what he had done up until 2018. So even if we accept his position that the clock for diligence didn't start until 2017, we don't have any, the agency didn't have any evidence in a motion to reopen on which he bore the burden of proof about what he was doing after 2017. Or even if we started the clock with Padilla versus Kentucky, for example, which was in 2010, we still don't have any information. There was no information before the agency about what he did between 2010 and 2018. Regardless of the theory, there was just no information before the agency. And that settles the only issue in this case. What if we say that that's incorrect? Well, I think that would require reading evidence into the record that isn't there, Your Honor. I mean, the declaration at pages... Well, we know when 1473.7 was adopted. That's right, Your Honor. But my... The matter of law, was there anything that he could have done from the time of his conviction until then? He could have tried, Your Honor. And I think that's a really critical point here. Why doesn't his declaration at 127 provide the kind of evidence that you're saying is entirely void from the record? Because that declaration does not address actions he was taking to investigate his rights between 1998 or 1999 and 2018. In paragraph three of his declaration at page 127, he says, when I was in court in 1998 for my criminal conviction, I didn't understand the immigration consequences of a conviction for the charge conduct. No one explained this to me. Had I known I could stand to lose my green card, I would have explored any other options in my case. That's his claim as he has defined it. And by the way, at page 28 of the record, he concedes he certainly knew that that conviction would have immigration consequences when he was physically removed to Mexico based on it in 1999. Let me... I want to make sure I understand your position. Sure. Even... Assume for purposes of this question, he really had no relief available to him until California passes the statute in 2017. Yes, Your Honor. You're saying that he nonetheless can be faulted for not investigating in the years before 2017, even though, under the premise of the question, he would have found nothing. Accepting the premise of your question for purposes of argument, Your Honor, you have correctly stated our position. And how can that possibly be? There was nothing to find. And you're saying, we're going to hold it against you and we're going to start the timeline running earlier because you didn't look, even though there was nothing to be found if you had looked. I don't understand how that's a reasonable position. I'm not saying that, Your Honor. The court's precedent says that. Evagion, Goulart, Lona, these cases identify that the standard for diligence is simple and not very high. I'm quoting from Avigin now. All it requires is that a reasonable person... It requires that the petitioner took reasonable steps to investigate the suspected fraud or  All that matters is that he was doing something to pursue his rights. If he'd gotten a lawyer and the lawyer had said, there's nothing you can do, you have to wait around until a new statute gets passed, maybe that would have been diligence. If he'd gotten a lawyer and the lawyer had given him wrong advice, but he'd relied on it and waited, that would have been diligence. Diligence just requires what a reasonable person would do to investigate a problem. And why, in his circumstance, isn't it a reasonable position? He had had a lawyer when he'd been before. He thought there was nothing to be done. He doesn't have much money. And you're saying you're supposed to go hire a lawyer to find out that there's nothing that he can do. And because you didn't hire a lawyer to find out that there was nothing you can do, you are now foreclosed from relief. Somehow that doesn't seem right. It's what the court's precedent says, Your Honor. I'm not sure I read the rest in the same way you do. Well, we'll have to disagree about that, Your Honor, and I respect your view about it. But I'm drawing from language in Evagion, Goulart, Lara Garcia, Perez Camacho, Lona, and other cases. Diligence is a simple standard because we're looking often at what lay people do or people who have had ineffective counsel. The question isn't, you know, I want to take a step back here. I think that the- Can you move to the question that I presented before you sort of went back to the earlier time frame? Of course. Let's just assume for purposes of this discussion now that we disagree with the notion that there was something to have been done before 2017. So what we're left with is agency using the wrong time frame. Let's assume that we decide that that's not the right time frame that they should have been looking at for determining diligence. What do we do with that now? Is, you know, remand appropriate? Can we just decide based on the record before us that there was diligence, that there wasn't diligence? What do we do? Well, Your Honor, I think there's plenty in the board's decision to support a denial of the petition for review even if this court disagrees with the exact timeline. Because what the board said, having looked at all the facts that the petitioner put in with his motion to reopen, was you didn't show diligence during this time period. Now if the court thinks the starting point was somewhere within that time period that the board mentioned, the same holding still applies. Start the clock in 2010 with Padilla. Still no information about what he did after that. Start the clock in 2017 with this California statute. No evidence about what he did after that. He had the burden before the agency to put this evidence in because diligence is in part a factual question. What did he do during this period of time? And then we get into the question of how to apply precedent to it. His declaration and the declaration of his post-conviction attorney, which are just about the only relevant facts that he put in, I mean, I've quoted the table of contents a couple of times. These are the documents discussing what he did and they all start the chronology in 2018. So the board's decision contains the necessary reasoning, as your Honor pointed out, citing Lona, even if the court thinks a different, more truncated timeline would have been appropriate. But even if the court disagrees with me about that and thinks that there is diligence here, the proper answer is an open remand saying that the board needs to go back and look at diligence within whatever the proper time frame is. Because if your Honor thinks that the board erred by assessing over an incorrect time period, then that's the error and that's what the board needs to look at, first of all. And then, even if they do look at that more narrowly. That's a period of about 18 months. Depending on when your Honor starts the clock, I guess you're talking about in 2017, right? After the adoption of 1473.7. We still dispute that that's the proper time period, your Honor. But even if that is the proper time period, where's the evidence in the record about what Mr. Avila-Morales was doing? Not to bring a valid claim, necessarily, but just to investigate what had happened. Let's assume from the silence of the record that he did nothing. Okay. Well, I think that is the appropriate assumption. And even if we don't know for sure that he did nothing, it was his evidentiary burden to show the agency what he had done. So even if he did, you know, in the unknowable, absolute truth of his life, do something. Let's assume he did nothing because he was entirely unaware of it. He becomes aware of it, we know, when he's briefly incarcerated. Let's assume that that's the factual record. That he becomes aware of it when he's incarcerated. Well, again, I think... Isn't that a fair assumption of what's going on? The only thing I'm quibbling with here, Your Honor, is what we mean by he becomes aware of it. You know, under the court's precedent about equitable tolling, there's two points in time that matter. One when the diligence clock starts, and one when it ends. And the clock starts when a reasonable person would... I'm not talking about a reasonable person for the moment. Okay. I'm talking about when this person becomes aware. Okay. And I think the record tells us he becomes aware of the California statute when he's incarcerated in 2018. Well, I don't think that his declaration says that, Your Honor. I don't think his declaration says, I became aware of this statute... Oh, you mean in 2018? Correct. That's what I said. Well, that would be the time point at which diligence ends, when equitable tolling ends, Your Honor. The second time point in the diligence inquiry is when the person obtains vital information bearing on the existence of the claim. And there are cases from this court, we cited them in the brief, where that deadline was met when that time point occurred, when a petitioner met with a new lawyer and understood that he had a claim. So if that's the time period we're looking at here, when he meets with his new lawyer and learns he has a legal claim for relief, that's when equitable tolling stops, not when it starts. Well, how can it stop then? Because at that point, he knows he has a possibility. But of course, he has no basis for setting it aside. The deportation order is setting aside until the conviction is set aside. Your Honor, that question and that point by opposing counsel are focused on the homestretch of a race that Mr. Avila wasn't even running. He wasn't doing any, he didn't put any evidence in front of the agency. I don't think that's an answer to my question. I think it is, Your Honor. What I'm saying is that his problem isn't this last period of time when he needed to get the order from the trial court. And by the way, even if we just focus on that, the immigration judge noted at page 87 that even if you assumed in Mr. Avila's favor that he was diligent all the way up until his motion to reopen was filed, looking at the clock that way, looking at the chronology that way would give him a whole month after he got the trial court's order for him to have filed his motion to reopen and he didn't file within that window. Now, the petitioner in his briefing says that that is requiring maximum feasible diligence because it's a period of only about a month. Again, that's the wrong way to look at the case because that's the wrong way to look at the diligence inquiry. Mr. Avila's position essentially is that the way diligence works is if a lawyer, years later, looking backwards with the benefit of hindsight and intervening precedent, can make a good argument that one form of relief wasn't available or another form of relief might not have worked, that's just not what the court's diligence cases hold. They hold that a petitioner has to investigate what happened. And this petitioner's declaration to the agency was, I didn't think when I pled guilty in 1998 that this conviction would disturb my immigration consequences. And then he concedes he should have, he did know it had immigration consequences when he was deported on that conviction in 1999. A reasonable person would have at least asked what happened. A reasonable person would have tried something. And we just don't have any evidence in this skeletal motion to reopen from which the agency could conclude that he'd met that burden. All of the petitioner's arguments to the contrary are retroactive legal arguments about why different things he might have tried wouldn't work. The diligence precedent of this court is just that he had to investigate it and try something. If this, if we had facts in the record showing that, this would be a completely different case. So, if we were to disagree with you and grant the petition, what you would say is what we need to do is send it back so that the agency can reconsider diligence. Correct. And certainly not anything relating to the underlying question of the effect of his post-conviction vacator. Because even if the panel believes it can see that answer from here, it's still got a Chenery problem. Which is that because the board's decision didn't address that subject, the court can't address it in the first instance. As we noted in the brief, there's no jurisdiction to consider, jurisdiction loophole here. That's just, that's just an issue that Mr. Adler wants to have before the agency, but he filed an untimely motion. So, that's down the line for the agency to consider. Thank you, Your Honors. Thank you. So, just a couple points. I think that, for one thing, I think that counsel wanted to correct something that counsel said earlier. Which is that Mr. Avila did not say that he thought his immigration, that someone told him that his conviction would have no immigration consequences. That's not at all what he said. No one told him about anything one way or the other. So, it wasn't that, I think that would be a very different situation. If his defense counsel said, this offense is immigration safe, and then he gets deported. Well, then he has vital information about his claim in 1999. And that's not the situation here. Because no one told him one way or the other. And so, he assumed, well, I guess this conviction was just, that was the only thing I could do. And this is what I'm left with is being deported. That turned out to be incorrect. And when he learned the vital information about his claim was not in August 2018. That was when he said, when someone first told him, hey, there might be something here. And then, you know, as his declaration describes in paragraph four on AR-127, you know, he was detained. He was working to support his. What steps did he take to learn that there had been this change in law in January 2017? Or maybe slightly earlier, based on your argument in your opening, that at the end of 2016. It seems to me that there is a gap, even if we were to agree with you that the time is not the sort of longer time period, but something shorter. There is still a gap in which there was really no efforts taken to discover or learn that there was the possibility of obtaining relief. Sure, but again, you know, I think that when someone is in a situation like Mr. Avila, which is, again, not a situation where he was told his conviction would have no immigration consequences. But, you know, in that situation, he he first learned in August 2018. I mean, that's the first time he learned anything of it. So he didn't know before then that there was anything he could have done. But we're not looking at sort of the subjective experience of this individual, whether he learned it. It's whether he could have or through some efforts and diligence could have learned that he had relief available to him. And that was true as early as when the statute was passed in 2017. I mean, I suppose that's true. But I think, again, in a case where you have someone who is, you know, working to support three U.S. citizen kids and a spouse and is not, you know, a learned person. You know, I don't know how you could expect him to be cognizant of this change in the law in 2016, you know, late 2016, early 2017. Now, the argument, as you just made it, doesn't key into timing. That is to say the statutes passed in 2017. He learns of its existence and its possible consequence about a year later. But you're saying but you can't expect him to know what's going on. And your argument, as currently articulated, would apply if the statute had been passed 10 years earlier. Is that right? Or are you saying, well, wait a minute, this wasn't actually very long. And therefore, we can look past it. I think that's it. It's the latter. I mean, I think that it's, you know, this court had I think if the statute had been passed in, say, 99 or something, it would be a different case just because you'd have a lot longer where, you know, he might have learned about the existence of the statute. But, you know, I don't think it's unreasonable under the facts of this case looking at it from the perspective of a reasonable person to say that, you know, learning of it in 2018 is not that long given the scope of what's at stake. And, of course, it's a California statute. He's in Washington State. He's in Washington State. Exactly. Exactly. Yeah. And I see I'm, oh, I'm over time. I'm so sorry. Thank you so much. All right. Thank you very much. Thank you. Thank you. Okay. The case just argued has been submitted, and we'll hear the final case on the calendar.
judges: FLETCHER, PAEZ, DESAI